Fiol Matta, Juez Ponente
*1241 TEXTO COMPLETO DE LA SENTENCIA
El co-demandado-recurrente, Ledo. Angel Marrero Figarella, solicita la revisión de la negativa del tribunal de instancia a desestimar sumariamente, en lo que a él respecta, una demanda sobre liquidación de bienes comunales, difamación, libelo y daños y perjuicios, aduciendo la excepción de cosa juzgada. Asimismo, cuestiona la negativa de dicho foro a ordenar la renuncia del representante legal de la demandante, Ledo. José Luis Machicote Mafuz. El licenciado Marrero Figarella había fundamentado esta solicitud en que al haberse presentado demanda contra tercero contra el licenciado Machicote Mafuz, surgía un claro conflicto de interés que le impedía actuar como abogado en el caso. El tribunal a quo resolvió ambas mociones con un escueto "no ha lugar" sin exponer los fundamentos de su dictamen. 
I
Los hechos que dieron lugar a la demanda surgen de la petición de certiorari y de los documentos anejados a ésta. La demandante-recurrida, Ligia Mercedes Vizcarrondo y Wilfredo Torres Ortiz, causante de los miembros de la sucesión co-demandada, iniciaron una relación consensual en el 1984. Ambos aportaron a la unión bienes muebles privativos y, a su vez, adquirieron bienes muebles durante la misma. El 30 de marzo de 1988 suscribieron como compradores una escritura de segregación, liberación y compraventa mediante la cual adquirieron una residencia en la urbanización San Pedro Estates de Caguas por la cantidad de $145,000. 
El señor Torres Ortiz falleció el 20 de julio de 1993 sin dejar descendientes. Su madre y cinco hermanos, por conducto del co-demandado-recurrente, Ledo. Angel Marrero Figarella, alegaron ser sus herederos y procedieron a cambiar las cerraduras de la residencia en San Pedro Estates en donde vivía su causante con la señora Vizcarrondo. El 7 de agosto de 1993 el licenciado Marrero, en representación de los alegados herederos, envió, a la mano, una carta dirigida a la co-demandada Asociación de Residentes de San Pedro Estates y a la compañía encargada de la seguridad de dicha urbanización y también co-demandada, Del Turabo Security Guard. La carta les informaba que "las únicas personas autorizadas a pasar a la residencia del difunto Torres Ortiz, localizada en el Bloque E Núm. 12 de San Pedro Estates, son sus herederos y éste que suscribe" y que "la Sra. Ligia Vizcarrondo ha penetrado en la casa y se ha llevado muebles y prendas". Esta carta fue grapada en el tablón de edictos a la entrada de la urbanización.
Once días después, el 18 de agosto de 1993, comenzaron comunicaciones escritas entre las partes, a través de sus abogados. En éstas se le requirió a los herederos del señor Torres Ortiz la entrega de las llaves de las cerraduras que fueron cambiadas. Sin embargo, según surge de una carta enviada al peticionario por el licenciado Machicote Mafuz, representante de la señora Vizcarrondo, al 1 de marzo de 1994 no se le habían entregado a la señora Vizcarrondo las llaves de la residencia en San Pedro Estates. 
El 11 de abril de 1994, la señora Vizcarrondo interpuso dos demandas, una en el Tribunal de Distrito, Sala de Caguas, sobre interdicto posesorio (Civil Núm. EPE-94-0050) y otra en el Tribunal Superior, Sala de Caguas, sobre liquidación de bienes comunales, difamación, libelo y daños y perjuicios (Civil Núm. EAC-94-0112). Las resoluciones aquí impugnadas fueron dictadas como parte de este último litigio. En ambas demandas aparecen las mismas personas como co-demandadas. Mediante sentencia emitida el 10 de mayo de 1994, el tribunal de instancia se declaró sin jurisdicción en el caso de interdicto posesorio. Surge de los autos que ello se debió a que no se habían diligenciado los emplazamientos dentro del término establecido por las Reglas de Procedimiento Civil. Ordenó el *1242 archivo sin perjuicio de dicha causa de acción "hasta que se radique nuevamente conforme a derecho y se radiquen los emplazamientos correspondientes". 
El 19 de mayo de 1994, la señora Vizcarrondo interpuso nuevamente un interdicto posesorio en el Tribunal Superior, Sala de Caguas, Civil Núm. EPE-94-0079, dirigido, entre otros, contra la sucesión hereditaria del señor Torres Ortiz y el licenciado Marrero Figarella. El licenciado Marrero Figarella contestó la demanda y, a su vez, interpuso demanda contra tercero contra el licenciado Machicote Mafuz, representante legal de la demandante. Esta segunda acción posesoria culminó con una sentencia de archivo por desistimiento emitida el 19 de diciembre de 1994. De la misma surge que la parte demandante desistió de la acción porque recibió la llave de la residencia objeto de la reclamación y que el co-demandado y demandante contra tercero en dicho pleito, licenciado Marrero Figarella, se allanó a desistir de la demanda contra tercero que había presentado contra el licenciado Machicote Mafuz. En su sentencia el tribunal "desestim[ó]" esta demanda contra tercero y ordenó "el archivo y sobreseimiento del caso". Todo ello en "virtud de las disposiciones de la Regla 39.1 y 39.2 de Procedimiento Civil..." 
En estas solicitudes de restitución de posesión, la demandante-recurrida alegó bajo juramento exactamente lo mismo. En síntesis, alegó que la propiedad inmueble en San Pedro Estates así como los bienes muebles que detalla en sus solicitudes, fueron adquiridos por ella y el señor Torres Ortiz durante su relación consensual; que este último falleció sin dejar descendientes; que la madre y cinco hermanos del señor Torres Ortiz, por conducto del licenciado Marrero Figarella, alegaron ser sus herederos; que la señora Vizcarrondo estuvo en posesión real de la propiedad hasta la muerte de su compañero consensual el 20 de julio de 1993 cuando "sus alegados herederos, por conducto del licenciado Marrero Figarella, mediante actos ilegales y fraudulentos [la] privaron de la posesión real de la propiedad... cambiando las cerraduras... para que... no pudiera entrar a la residencia y además circularon y publicaron una carta firmada por el licenciado Marrero Figarella, en la cual se [le] imputaba... haberse llevado los muebles y prendas de la residencia y [donde] se... apercibía [de ello] a la Asociación de Residentes de San Pedro Estates,... y a Del Turabo Security Guard"; que los demandados a pesar de estar en posesión de la propiedad no estaban pagando las mensualidades de la hipoteca y la institución financiera estaba por iniciar procedimientos para ejecutar la misma; que el comportamiento de los promovidos le había ocasionado y estaba ocasionándole "daños y perjuicios irreparables, así como pérdidas económicas de valor significativo"; y que los alegados herederos se negaban a entregarle las llaves de las cerraduras que cambiaron en la residencia y ciertos bienes muebles de su pertenencia que removieron de la propiedad. Contra el licenciado Marrero Figarella alegó que "con grave menosprecio a la verdad, negligentemente fue la persona que preparó, redactó, presentó, publicó y circuló la carta [anteriormente mencionada].., [y] debe tener conocimiento a [sic] quiénes fueron las personas que ilegalmente han obtenido el control de los bienes comunales de la peticionaria y Wilfredo Torres Ortiz, por lo cual [sic] debe responder solidariamente por todos los daños ocasionados tanto a los bienes como a la persona de la peticionaria". Como remedio en ambos escritos le solicita al tribunal "que dicte una orden obligando a los promovidos a restituir a la peticionaria en la posesión del bien inmueble... [y] todos los bienes muebles que se encontraban dentro de dicha propiedad". 
En la demanda por liquidación de bienes comunales, difamación, libelo y daños y perjuicios, que había presentado el 11 de abril de 1994, la señora Vizcarrondo expuso esencialmente lo mismo que en las acciones sumarias interdíctales anteriormente descritas. Asimismo, alegó en forma general que al autorizar la carta firmada por el licenciado Marrero Figarella, los alegados herederos la difamaron, causándole daños físicos y emocionales estimados en $75,000. Como remedio, solicitó al tribunal que dictara sentencia a su favor "condenando a los co-demandados solidariamente y/o mancomunadamente al pago de las sumas reclamadas en cada causa de acción descritas [sic] en [la] demanda...". 
El licenciado Marrero contestó la demanda y, a su vez, reconvencionó contra la señora Vizcarrondo. En su contestación, levantó como defensas afirmativas que la demanda no aducía hechos constitutivos de causa de acción en su contra pues él sólo actuó en representación de su cliente y en segundo lugar, que la demandante no mitigó los daños. Además, presentó demanda contra tercero contra el licenciado Machicote Mafuz, abogado de la señora Vizcarrondo, quien contestó la misma el 17 de agosto de 1994. El 26 de ese mismo mes, presentó la moción informando conflicto. Esta fue *1243 denegada por el juez de instancia el 7 de abril de 1995, casi un año después. Dicha orden fue notificada a las partes el 26 de abril de 1995. Mientras tanto, el 8 de marzo de 1995, tras archivarse el interdicto posesorio por desistimiento, el licenciado Marrero Figarella solicitó sentencia sumaria parcial que desestimara la acción en su contra, alegando la defensa de cosa juzgada. Esta solicitud se denegó el 1 de mayo de 1995, mediante resolución y orden archivada en autos el 4 de mayo de 1995. Es de estas dos resoluciones denegatorias que recurre en certiorari.
En su recurso, el peticionario señala, en primer lugar, que el tribunal de instancia erró al no dictar sentencia sumaria desestimando la demanda. Reclama que procede la defensa de cosa juzgada en cuanto a la acción instada en su contra porque entre el presente caso y los dos casos anteriores de entredicho posesorio existe la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. Aduce, además, que en el segundo pleito de entredicho posesorio anterior las partes tuvieron la oportunidad de presentar prueba a su favor, sin que se lo impidiera la naturaleza sumaria de este procedimiento. Por ello, entiende que la sentencia dictada en el mismo es suficiente para levantar la defensa de cosa juzgada, aun cuando las partes, por las razones que fueran, optasen por no presentar su prueba. Alega también que la naturaleza especial y sumaria del procedimiento anterior tampoco es obstáculo para que la sentencia dictada en el mismo sirva de fundamento para la defensa de cosa juzgada en un pleito ordinario posterior. Cita como fundamento para esta alegación lo resuelto por el Tribunal Supremo en Worldwide Food Distributors, Inc. v. Colón. Bermúdez, 93 J.T.S. 114.
El peticionario también argumenta que no se puede oponer a la excepción de cosa juzgada el que no se haya solicitado compensación por daños en la acción de entredicho posesorio. Ello es así, según el peticionario, porque "[e]l remedio... no es un elemento integrante de la causa de acción, de manera que no procede una acción de daños basada en un derecho adjudicado en un pleito anterior entre las mismas partes en el cual debieron reclamarse los daños". Mercado Rivera v. Mercado Rivera, 100 D.P.R. 940, 952-953 (1972). 
La parte recurrida no ha comparecido para oponerse a la expedición del recurso. No obstante, nuestro estudio de los planteamientos del peticionario, de la moción de sentencia sumaria y la prueba que acompañó a la misma y del escrito en oposición a la moción de sentencis sumaria nos lleva a la conclusión de que en este caso no procede dictar sentencia sumaria por cosa juzgada.
II
La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R..A Ap. III, R. 36.3, dispone que se dictará sentencia sumaria "si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material, y que como cuestión de derecho, debe dictarse la misma a favor de la parte promovente" (énfasis suplido). En casos como en el que nos ocupa, en los que la solicitud de sentencia sumaria desestimando la demanda está basada en la defensa de cosa juzgada, no es necesario determinar que no hay controversias en cuanto a los hechos alegados por las partes. Por el contrario, la ausencia de controversias debe buscarse en la comparación entre las alegaciones y sentencia del caso anterior que se alega constituye cosa juzgada y las alegaciones del caso cuya desestimación se solicita. Por eso, la existencia de una controversia genuina sobre los hechos pertinentes a la causa de acción en el caso para el cual se solicita la sentencia sumaria no impide que se dicte sentencia sumaria basada en cosa juzgada, siempre que estén presentes entre dicho caso y el pleito anterior los requisitos de identidad que la ley requiere para la aplicación de esa defensa. Bolker v. Tribunal Superior, 82 D.P.R. 816 (1961).
De esta forma, cuando se alega cosa juzgada como fundamento para una solicitud de sentencia sumaria, el ejercicio adjudicativo se contrae a resolver lo que es, esencialmente, una cuestión de derecho. Al resolverla, el juez deberá tener presente que por tratarse de un mecanismo procesal que permite que se adjudique un litigio sin que las partes tengan la oportunidad de presentar su caso en corte, la sentencia sumaria "sólo debe concederse cuando el promovente ha establecido su derecho con claridad y ha demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia discernible de las alegaciones que no se hayan refutado por la evidencia presentada". Corp. of Presiding Bishop v. Purcell, 111 D.P.R. 714 (1987). Véase, además, Consejo de Titulares del Condominio Parkside v. M.G.I.G. Financial Corp., 91 J.T.S. 54; Roig Commercial Bank v. Daniel *1244 Rosario Cirino, 90 J.T.S. 106. Por eso, se requiere del juez de instancia un "sabio discernimiento" que debe ejercerse no tan sólo al resolver si hay alguna controversia de hechos material y genuina que deba adjudicarse en un juicio plenario, sino al precisar el derecho aplicable, aún cuando los hechos no estén en controversia. A tenor con esta obligación, el juzgador deberá asegurarse de que el derecho aplicable dictamina la procedencia de lo solicitado por el promovente, pues ”[e]s requisito ineludible para dictar sentencia sumaria a favor de una parte no solamente el que no haya una controversia real en cuanto a ningún hecho material, sino, además, que como cuestión de derecho, procede se dicte a su favor". Carrillo Norat v. Camejo, 107 D.P.R. 132, 139 (1974).
Debemos, pues, precisar la doctrina de cosa juzgada y examinar las alegaciones, la disposición y la naturaleza de los casos interdíctales anteriores para determinar si están presentes en ellos los elementos que, como cuestión de derecho, permitirían levantar la defensa de cosa juzgada en el presente caso.
III
La excepción de cosa juzgada figura en nuestro Código Civil en el capítulo relativo a la prueba de las obligaciones, y específicamente, en la sección relativa a las presunciones. En efecto, el artículo 1204 del Código Civil dispone que:

"Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.

Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron...."

Según reitera el Tribunal Supremo en Worldwide Food Distributors, Inc. v. Colón Bermúdez, supra, la defensa de cosa juzgada tiene el efecto de evitar que en un pleito posterior se litiguen cuestiones que ya fueron o que pudieron haber sido litigadas y adjudicadas en un pleito anterior. Su fundamento es, precisamente, garantizar "la certidumbre y seguridad de los derechos declarados por resolución judicial, para evitar gastos adicionales al estado y a los litigantes". Worldwide Food Distributors, supra, página 10966. Resulta obvio, pues, que la doctrina de cosa juzgada será aplicable no sólo en la medida en que entre el caso resuelto por la sentencia y aquél en que se invoca haya identidad entre las cosas, las causas, las personas litigantes y la calidad en que lo fueron, sino siempre y cuando la sentencia anterior sea una adjudicación en los méritos, y tenga carácter de firme, pues según el citado artículo 1204, contra la presunción de cosa juzgada "sólo será eficaz la sentencia ganada en juicio de revisión". E.L.A. v. Soc. Civil Agrícola e Industrial, 104 D.P.R. 392 (1975); Fresh-O-Baking Co. v. Molinos de P.R., 103 D.P.R. 509 (1975); Rivera v. Insurance Co. ofP.R., 103 D.P.R. 91 (1974). También, por esa razón, la sentencia que se alegue como cosa juzgada debe haberse dictado por un tribunal actuando con jurisdicción. J.R.T. v. Hosp. de la Concepción, 114 D.P.R. 372 (1983); Bolker v. Tribunal Superior, supra, página 824.
Los dos casos anteriores instados por la recurrida contra el peticionario y que, según este último reclama, impiden la presente acción en su contra fueron acciones sobre interdicto posesorio al amparo de los artículos 370 y 375 del Código Civil, a través de un mecanismo procesal sumario provisto por el Código de Enjuiciamiento Civil. El primero, según ya hemos señalado, se desestimó por falta de jurisdicción del tribunal por lo que, de acuerdo con los principios generales sobre la defensa de cosa juzgada, no puede servir de base para establecer la excepción de cosa juzgada. Por otra parte, tampoco fue la sentencia en la segunda acción de interdicto posesorio una adjudicación en los méritos. Dicho pleito, como vimos, culminó con una sentencia de archivo por desistimiento bajo la Regla 39.1 (b) a petición del actor, el mismo día en que se llamó el caso para vista. La sentencia así dictada es sin perjuicio, puesto que el juez nada dijo en contrario en su orden de archivo. Por tanto, no fue una adjudicación en sus méritos y no puede servir de base para alegar la defensa de cosa juzgada. Fresh-O-Baking Co. v. Molinos de P.R., supra.
El demandante arguye que al haberse desestimado la primera acción y desistido de la segunda, se debe aplicar la disposición de la Regla 39.1 de Procedimiento Civil, según la cual: "el desistimiento será sin perjuicio, excepto que el aviso de desistimiento tendrá el efecto de una adjudicación sobre los *1245 méritos cuando lo presentare un demandante que haya desistido anteriormente... de otro pleito basado en o que incluya la misma reclamación". No tiene razón, pues esta regla impone una sanción al demandante que ocupa los recursos del tribunal para desistir voluntariamente en dos ocasiones, cosa que no sucedió aquí.
Sea como fuere, si bien entre aquel procedimiento y el actual podría existir identidad entre las cosas y las personas de los litigantes, así como en la calidad en que lo fueron, no existe identidad alguna de causas entre ellos, por lo que, de todas formas, no podría aplicarse la excepción de cosa juzgada en el presente caso.
El procedimiento interdictal posesorio es uno especial y sumario muy distinto a la acción ordinaria actual. Los artículos 690 a 695 del Código de Enjuiciamiento Civil proveen la acción judicial interdictal sumaria para amparar o restituir el derecho de una persona que ha sido "inquietado en la posesión" de un inmueble, violándosele así su derecho a la posesión pacífica reconocido por el Código Civil. A dicha acción le son aplicables, no las Reglas de Procedimiento Civil, sino las normas establecidas en los citados artículos del Código de Enjuiciamiento Civil, dejados en vigor por la Regla 72 de Procedimiento Civil, 32 L.P.R.A. AP.III, R.72. El propósito de un interdicto posesorio es proveer al poseedor de una propiedad inmueble un remedio rápido y eficaz para proteger su posesión, desalentando así que los ciudadanos recurran a la fuerza y la violencia frente a amenazas de desposesión o a la desposesión consumada. Por ello, en dichas acciones interdíctales sólo puede litigarse el hecho y no el derecho a la posesión, sin perjuicio de que los derechos de los interesados sean dilucidados en una acción plenaria. Disdier Pacheco v. García, 101 D.P.R. 541 (1973). En Disdier v. Pacheco, el Tribunal, citando de Martorell v. Municipio, 70 D.P.R. 380, 385 (1949), explicó también que la acción interdictal sólo tiene por objeto "decidir interinamente sobre el hecho de la posesión sin perjuicio del derecho de los interesados, ya que por su propio carácter, las resoluciones en ellas recaídas no deciden nada en definitiva...." Disdier Pacheco v. García, supra, a las páginas 548-549.
En el pleito actual, la demandante reclama que los herederos del señor Torres Ortiz y el licenciado Marrero Figarella responden solidariamente por los daños y perjuicios que ella ha sufrido en sus bienes comunales y privativos, y por los sufrimientos físicos y emocionales causados por el alegado libelo por difamación, causas muy distintas a la del pleito de interdicto posesorio. El recurrente argumenta que la recurrida está impedida de relitigar sus reclamos contra él en el pleito actual porque la doctrina de cosa juzgada se extiende a todas las cuestiones que se litigaron o que pudieron haberse litigado en el otro pleito. Su argumento no es válido. Contrario a lo sucedido con la acción de desahucio en el caso de Worldwide Distributors, Inc. v. Colón Bermúdez, supra, en el que se apoya el apelante, en la acción posesoria el tribunal no podía adjudicar ni adjudicó reclamación alguna en daños. Como no podían litigarse en dicho pleito interdictal los daños alegados por la demandante en el presente caso, no hay identidad de causas entre éste y la presente acción. Por ello, aun cuando la sentencia por desistimiento fuese una adjudicación en los méritos, no procedería la defensa de cosa juzgada en este caso.
Por la misma razón que hemos explicado hasta ahora, tampoco sería de aplicación a este caso la modalidad de cosa juzgada que conocemos como "impedimento colateral por sentencia". Dicha modalidad de la doctrina de cosa juzgada, que no requiere identidad de causas, impide relitigar un hecho que se haya suscitado efectivamente o litigado y adjudicado necesariamente en un pleito anterior entre las mismas partes. Pereira v. Hernández, 83 D.P.R. 160 (1961). No impide, sin embargo, la litigación de materias que pudieron ser litigadas y adjudicadas en el caso anterior pero que, en efecto, no lo fueron. Millán v. Caribe Motors Corp., 83 D.P.R. 494 (1961). Los daños alegados por la recurrida en este caso, según hemos señalado, ni fueron ni debían ser adjudicados en el pleito de reposesión. Tampoco puede decirse que lo fueran los hechos en que se fundamenta la presente acción. Las alegaciones en aquel caso sirvieron para demostrar el despojo de la propiedad que alegaba la demandante aquí recurrida y la intención del demandado, aquí peticionario, de llevar a cabo el despojo. Vázquez v. Maymi, 31 D.P.R. 609 (1923). Al incluirlas en su demanda de interdicto posesorio, la demandante cumplió con lo dispuesto en el artículo 691 del Código de Enjuiciamiento Civil, 32 L.P.R.A. 3562, que requiere que la demanda de interdicto posesorio describa "claramente los hechos constitutivos de la perturbación o despojo, así como si dichos actos fueron realizados por el demandado o por otra persona por orden de éste”.
*1246 Por todo lo anterior, no erró el tribunal de instancia al denegar la moción de sentencia sumaria parcial solicitada por el recurrente.
El peticionario señala, además, que el tribunal de instancia erró al denegar su moción informando conflicto de intereses. Según el peticionario, a pesar de que con posterioridad a dicha moción se desestimó la demanda contra tercero que interpuso contra el licenciado Machicote Mafuz, "ello no evitó ni impidió, que en un momento dado el licenciado Machicote Mafuz estuvo en un claro conflicto de intereses entre su presentada [sic] y el suyo propio" . 
Su señalamiento carece de finalidad práctica y es académico. Cuando se denegó la moción informando conflicto de intereses ya se había desestimado la demanda contra tercero. La doctrina de academicidad requiere que exista una controversia genuina entre las partes durante todas las etapas de un procedimiento adversativo, incluyendo la etapa de apelación o revisión. Noriega Rodríguez v. Hernández Colón, 94 J.T.S. 35: "Los tribunales pierden jurisdicción sobre un caso por academicidad cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que la misma pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de tener efecto real alguno en cuanto a esa controversia." Comisión Estatal de Elecciones v. Departamento de Estado del E.L.A., 93 J.T.S. 163, a la página 11376.
A tenor con lo expresado, se expide el auto y se confirman las resoluciones recurridas.
María de la C. González Cruz
Secretaria General
ESCOLIOS 95 DTA 317
1. Su petición de certiorari fue presentada ante el Tribunal de Circuito de Apelaciones el 18 de mayo de 1995.
2. Debemos señalar que al no tener el beneficio de conocer sus fundamentos, especialmente en lo referente a la moción de sentencia sumaria parcial, se dificulta nuestra función revisora.
3. Petición de certiorari, Apéndice, páginas 55-62.
4. Id., página 44.
5. Id., página 70.
6. Minuta y Sentencia de 10 de mayo de 1994, páginas 45-46 y 18, respectivamente, del Apéndice a la Petición de Certiorari.
7. Petición de Certiorari, supra, página 53.
La Regla 39.1 (b) de Procedimiento Civil le permite al demandante desistir del pleito si el tribunal se lo permite. En dichos casos y a menos que "la orden especifique lo contrario", el desistimiento será sin perjuicio.
8. Ver ambas demandas en las páginas 39 a 43 y 47 a 51 del Apéndice a la Petición de Certiorari.
9. Demanda sobre liquidación de bienes, etc., Petición de Certiorari, Apéndice, páginas 1-10.
10. Petición de Certiorari, página 8.
11. 31 L.P.R.A. 3343.
12. 31 L.P.R.A. 1444 y 1461 respectivamente.
*1247 13. Identidad de cosas se refiere a identidad en el "objeto o materia sobre el que se ejercita la acción". Lausell Marxuach v. Díaz Yañez 103 D.P.R. 533 (1975). Puede tratarse de la absoluta identidad en el sentido de que el segundo pleito se refiera a la finca u objeto mismo sobre el que versó el primero, pero en general basta que se refiera al mismo asunto, aunque en el uno se abordase totalmente y sólo parcialmente en el otro, y aunque las cosas hayan sufrido disminución o alteración, desde el primero al segundo, que afecte su valor o alguna otra de sus condiciones. Rodríguez Rodríguez v. Colberg Comas, supra.
14. 32 L.P.R.A. 3561 a 3566.
15. El artículo 370 del Código Civil prohibe que se despoje de una cosa a su poseedor en forma violenta. El que se crea con derecho para privar a otro de la posesión de una cosa, según dicho artículo expresa, "deberá solicitar el auxilio de la autoridad competente". Por su parte, el artículo 375 del mismo cuerpo legal dispone que "[tjodo poseedor tiene derecho a ser respetado en su posesión; si fuere inquietado en ella, deberá ser amparado o restituido en dicha posesión por los medios que las leyes de procedimientos establecen". 31 L.P.R.A. 1444 y 1461.
16. Véase Alfaro v. Alonso, 27 D.P.R. 53 (1919), en el que el Tribunal reconoce, aunque no lo resuelve específicamente que la figura procesal de expediente posesorio no admite que se acumulen otras causas de acción.
17. Petición de Certiorari, página 18.